# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# GREEN BAY DIVISION

TUFCO L.P.,

    Plaintiff,

v.                                          Case No. 1:21-cv-1199-WCG

RECKITT BENCKISER (ENA) B.V.

    Defendant.

## TUFCO OPPOSITION TO RB'S
## MOTION TO COMPEL DISCOVERY PURSUANT TO RULE 37(a)(3)(B)(iii)

Plaintiff Tufco L.P. ("Tufco") respectfully submits this Opposition to Reckitt Benckiser (ENA) B.V.'s ("RB's") Motion to Compel Discovery Pursuant to Rule 37(a)(3)(B)(iii).

## BACKGROUND

As this Court previously ruled, this is a breach of contract dispute solely between Tufco and RB regarding the production and purchase of disinfecting wipes pursuant to the Supply Agreement between them. RB's motion to compel attempts to dramatically expand the scope of this narrow breach of contract dispute. At issue here is a *force majeure* event arising out of the unanticipated and tragically lethal spike of a COVID-19 variant which struck Wisconsin with force in the winter of 2020–2021, and how the penalty and other provisions in the Supply Agreement operate in light thereof. RB's requested discovery seeks to turn this dispute into an audit of Tufco's entire business, including different products that are manufactured on unrelated production lines, while also prying into third parties' (*i.e.* RB's competitors') contract terms and negotiations, their

raw material suppliers, their supply-chain details, and other trade secret information which is inextricably interwoven into the related responsive documents and communications. As demonstrated below, it is anticipated that this expansion of scope would require review of millions of pages of emails, reports, and spreadsheets and would then necessitate a full investigation of the facts, circumstances, and business relationships concerning each of the other contracts that are not at issue in this action.[1] It is reasonable to anticipate an onslaught of third-party discovery, subpoenas, additional depositions, and the mushrooming of this dispute into the litigation or re-litigation of third parties' contracts not at issue, encroaching into areas that, contrary to RB's comments in the Motion, Tufco has consistently and timely objected to as irrelevant and unduly burdensome.

The breadth of communication between RB and Tufco produced in this case readily demonstrates how burdensome it would be to multiply this discovery burden by including other customer communications unrelated to the Supply Agreement at issue. *Contra* RB's suggestions, between March of 2020 and September of 2021, Tufco manufactured (or "converted" to use the industry term) and shipped over 6,300,000 units of disinfecting wipe products to RB. The parties were in regular contact due to problems in RB's supply-chain, its shifting demand, and varying needs. RB's proposed expansion of the scope of this case would require production of similarly voluminous communications across all of Tufco's other customer communications.

Of further concern is that this foray into Tufco's other production lines for other customers would necessarily involve discovery into the trade secrets of Tufco's other customers (competitors

---

[1] A single prior dispute with another customer involved the collection of 2,358,675 pages of documents, and so the burden of expanding the scope of discovery in this case across several other customers would be massively and unduly burdensome. (Mosely Decl. at ¶ 4.)

of RB). RB may respond that it does not intend to intrude on trade secret information, but this only places an even higher level of burden on Tufco—and passes related risks through to the third parties. Not only would Tufco's counsel need to review all the millions of pages of potentially responsive communications and documents addressed herein, it would also need to assess what information referenced within those documents constitutes trade secrets for the respective third-party competitors. Are the raw material blends used by an RB competitor trade secret information? Are the proportions of chemicals used to convert products for RB's competitors trade secrets? Are RB's competitors' supply chains, sourcing, and negotiated pricings of raw materials and the conversion thereof trade secrets? Are the answers to these questions different for different businesses? Yes, most likely. Once Tufco's counsel has spent thousands of hours reviewing all these documents, presumably the third parties would also need the opportunity to review the documents queued for production to ensure that their understanding of what specifically comprises trade secrets to their respective companies are not leaked to competitors and their agents, regardless of the existence of a Protective Order.[2]

As a co-packer that produces and produced disinfecting wipes not only for RB, but also for RB's competitors, Tufco is obligated, pursuant to its agreements with these nonparty business partners, to keep the terms of its agreements, and its communications with such competitors, confidential. Further, because Tufco is in the business of manufacturing disinfecting wipes and other products for nonparty competitors of RB, Tufco's internal communications (and its external

---

[2] It is telling that RB itself has heavily redacted the identity of its own third-party partners and related business terms in its produced documents in this case, and accordingly instructed its corporate designee not to answer related questions at deposition, in apparent agreement that even a "Highly Confidential" or "Attorneys' Eyes Only" designation would be insufficient protection for confidential information of third-party partners. (Mosely Decl., at ¶ 5.)

customer communications) are littered with information not only about pricing terms and volume, but also sensitive information about the raw materials and formulas used to produce these nonparty competitors' disinfecting wipes (and other products not at issue in this action but requested in the discovery at issue in RB's Motion) — all highly sensitive and confidential information that could be used to infer the formulas for said nonparty competitors' wipes. Significantly, this confidential information *does not belong to Tufco*. Instead, this information belongs to RB's competitors, and while there is a Protective Order in this case, Tufco (let alone the RB competitors) does not have the opportunity or right to ensure that counsel does not provide assistance on corporate and transactional matters with RB (which would arguably be disqualifying with access to such sensitive information), or that testifying or non-testifying experts who would have access to Highly Confidential documents do not have other business connections to RB. (Mosely Decl., at ¶ 5.)

RB itself recognizes the sensitivity of this type of information, and indeed RB (as a customer) has not only redacted its own third-party partner information (including identities and terms, and by instructing its corporate designee not to answer related questions at deposition), it also sued Tufco for breach of confidentiality for the very act of filing this litigation and purportedly disclosing the existence of certain contractual terms. In apparent recognition of this incongruity, RB dropped this cause of action mere days before filing its motion to compel. Thus, at the outset of this discovery dispute, it is critical for the Court to understand that RB is embarking upon a fishing expedition into what it knows is its competitors' confidential information.[3]

---

[3] In meet-and-confer communications RB's counsel has disclaimed a desire to obtain formulas or trade secret information, but the reality is that discussions with customers about the manufacturing of their various products necessarily addresses such information.

Additionally, the proposed fishing expedition is unwarranted because RB has not—and cannot in good faith—show that the disclosure of non-party competitors' confidential and trade secret information is both relevant *and necessary* for the case at hand, especially in light of the information already provided by Tufco. This is a breach of contract case centering on the business relationship and contractual terms between Tufco and RB, including the penalty and *force majeure* provisions. A deep dive into Tufco's other business relationships is neither relevant nor reasonably calculated to result in the discovery of admissible evidence.[4] Furthermore, Tufco has already produced voluminous reports detailing its staffing deployment, where evidence of Tufco's staffing is RB's sole professed need for this discovery. (Mosely Decl., Ex. 4.) And in sworn discovery responses Tufco has provided the totals of demand and production for all of its products in reports produced in advance of, and explained in, the deposition of Tufco's Rule 30(b)(6) designee. (Mosely Decl., Ex. 1 -4). Therefore, the documents RB seeks are not only unduly burdensome and irrelevant, they would also be cumulative as to the total demands, outputs, and "top-level" information that RB has separately requested and received in documents and related sworn testimony. Furthermore, and significantly, given the highly sensitive and confidential nature of the nonparty competitors' business information, RB's motion declines to limit or narrow the information or documents they seek. Instead, they seek to burden Tufco with producing all documents with:

> information concerning the four [nonparty competitor] customer contracts . . . including the contracts themselves and all documents and communications

---

[4] Although RB implies that Tufco made no "relevancy" objection, that is plainly false. Tufco asserted and preserved the objection in every appropriate place, including in objecting to the Fed. R. Civ. P. 30(b)(6) deposition notice and in objections to all the discovery requests at issue by this Motion. Tufco never conceded that RB's requests for third-party competitor documents and data were relevant, and repeatedly raised the problems around confidentiality and trade secret, and the undue burden that the broad requests for competitor data would impose on Tufco.

5

> regarding, without limitation, Tufco's ability or inability to produce [products], any *force majeure* notices, staffing, labor and production, manufacturing prioritization, penalties and the two similar disputes.

(Proposed Order, Docket 68-2, at ¶ 3.)

Notably, RB fails to explain why it needs such a vast scope of documents, which appears to include all communications with these nonparty competitors and internal communications about the nonparty competitors' contracts, pricing, and supply chain. Such documents include communications and large excel spreadsheets that reference and/or contain nonparty competitors' trade secret product formulas and raw material specifications. Production of such documents would conservatively require thousands of attorney hours to appropriately redact, and despite knowing about these confidentiality concerns, RB has not provided any basis that would reasonably justify imposing such a burden on Tufco. The necessary information has been provided. The remainder is cumulative, irrelevant, and tremendously burdensome. The motion to compel should be denied.

## ARGUMENT

### A. Governing Standard

RB is not entitled to use this litigation to run roughshod over third parties' trade secret protections. Instead, RB's need for the information in question must be evaluated and balanced against the need to protect such trade secrets. Where a party has shown "that the information sought is confidential and that its disclosure might be harmful, the burden shifts to the party seeking discovery to establish that disclosure of trade secrets and confidential information is relevant **and necessary** to its case." *Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987) (emphasis added). Thus, a party seeking discovery of confidential information must "establish that it is reasonably necessary for a fair opportunity to develop and prepare the case for trial." *Id.* at 743. Further, in weighing these competing needs courts have recognized and "presumed that

6

10384690.1
Case 1:21-cv-01199-WCG   Filed 10/04/24   Page 6 of 15   Document 76

disclosure to a competitor is more harmful than disclosure to a noncompetitor." *Id*. Finally, courts also consider whether the information sought is truly necessary, or whether it is cumulative of other information. *Id*. at 742–43. Therefore, here, the Court should be highly skeptical of RB's efforts to gain access to its competitors' confidential information.

>   **B.  RB is Seeking Production of Trade Secrets and Other Confidential Information.**

There can be no question that the documents RB is seeking are littered with information that would expose trade secrets and/or confidential information. Product formulas and pricing information are considered to be classic examples of protectable trade secrets that a Court can and should protect from discovery where such information is not necessary for a party to try its case. *See American Standard*, 828 F.2d at 740 (collecting cases). Although RB has disclaimed an interest in discovery of such matters, the reality is that Tufco's correspondence with its customers necessarily contains much of this information. Furthermore, the disclosure and designation of such materials under the Protective Order would provide insufficient protection as apparently acknowledged, agreed, and evidenced by RB's own redaction of similar third-party partner information in documents it designated as Highly Confidential/Attorneys' Eyes Only.

Again, RB only recently was taking this position itself. In its now-dismissed Count Six, RB alleged that "the existence of" its Supply Agreement with Tufco was confidential, and that the agreement's terms, and the "parties' business relationship" was confidential. (Docket 38, at ¶¶ 201–202.) Indeed, RB alleged that as a result of the disclosure, it "has suffered and continues to suffer damages," including "harm to its negotiating position, and harm to its supplier and client relationships." (*Id*. at ¶ 203.) Although confidentiality issues are central to RB's motion, it does not once contest that the clear confidentiality associated with pricing information and trade secrets

7

10384690.1
Case 1:21-cv-01199-WCG   Filed 10/04/24   Page 7 of 15   Document 76

pertaining to product composition.[5] The parties are in agreement that the information at hand is confidential, and RB itself has demonstrated that it strictly enforces its own confidentiality requirements about similar information. Accordingly, it cannot come as a surprise that RB's competitors would be similarly protective of their own confidential and trade secret information.

### C. RB's Discovery Requests are Each Overly Burdensome, and Seek Irrelevant Confidential Information

Tellingly, RB omits any detailed discussion of the specific discovery responses that are the subject of its motion. As demonstrated below, Tufco has taken a highly reasonable approach in responding to these patently overbroad requests that demand hundreds of thousands of documents replete with irrelevant and highly confidential information. RB also omits that Tufco has substantively responded to many of these requests. Tufco addresses each category of information sought and the related requests:[6]

#### 1. Production Data (Interrogatories Nos. 3–4, Set 2)

RB wrongly suggests that Tufco refused to respond to Interrogatories Nos. 3 and 4, Set 2. Taking into account the confidentiality concerns of the nonparty competitors, Tufco provided substantive and fulsome responses to these interrogatories, and it is unclear what else RB is demanding or why it needs further information. Interrogatory No. 3, Set 2 demanded Tufco's "production volume and production capacity by product and by month. . . ." In response Tufco

---

[5] Although RB questions the specifics of the confidentiality agreements at issue, RB does not appear to question whether the underlying information is of the type that is generally confidential (and that RB itself considers to be highly confidential to the point that even reference to the existence of such terms and information supposedly warranted the filing of related claims in this action).

[6] RB also requests that Tufco be compelled to present a Rule 30(b)(6) witness to testify as to each of the discovery requests. Because the motion to compel should be denied as to each request, it should also be denied as to the Rule 30(b)(6) witness for the same reason.

produced reports which it identified by bates label. (TUFCO_RB_0059914–59916 and TUFCO_RB_0062063-TUFCO_RB_0062093.) (Mosely Decl., Exhs. 1–2.) These reports identified product type, volume, capacity, and pricing terms while maintaining confidentiality of Tufco's clients by omitting the names of the customers. (Futterman Cert., Ex. K at 13.) The report (Mosely Decl., Ex. 2) also shows the machinery Tufco used and its capacity. Similarly, Interrogatory No. 4, Set 2 demanded that Tufco identify pricing terms for any of its contracts for the supply of products. (*Id*. at 14.) Tufco produced the reports described above (TUFCO_RB_0059914–59916). (Mosely Decl., Ex. 1.)

RB's motion does not explain what is deficient or missing from Tufco's response, and incorrectly seems to imply that Tufco refused to respond.[7] This could not be further from the truth. Not only did Tufco produce the reports discussed above, RB was afforded the opportunity to (and in fact did) depose a Tufco Rule 30(b)(6) witness, at length, specifically about these reports. (*See e.g.*, Mosely Decl., Ex. 3 at 104:19–127:10; 142:18–146:4.) While RB's motion repeatedly suggests that Tufco "blocked" anything but the most general questions on the grounds of confidentiality, the fact is that the witness (Egal Gabbay) did not refuse to answer even a single question about these reports.[8] Therefore, to the extent RB felt any information was missing, it ought to have asked the witness.

The closest RB comes to identifying a deficiency is its mention of the fact that the reports are "anonymized." (Docket 67-3, at 5.) However, the interrogatories at issue did not request that

---

[7] RB should not be permitted to make a new argument for a deficiency in these interrogatories in its reply brief because Tufco would have no opportunity to respond. Any such argument should have been included in its motion.

[8] During the testimony about these reports. the confidentiality issue was raised a single time, and the witness still answered the question (after a brief consultation with Tufco's counsel). (*See* Mosely Decl., Ex. 3 at 113:24–115:18.)

9

specific orders be attributed to specific customers, and RB does not even argue that it is entitled to de-anonymized information. Even if they had made this argument, it is unclear what legitimate reason RB could have for tracking the production numbers and pricing for its specific competitors. RB's professed use for this information is to show that Tufco was producing products for other customers, and it has the information to make that incomplete and faulty argument. Requiring Tufco to provide further information identifying and disclosing RB's competitors' confidential information would be cumulative and irrelevant to the argument put forward in RB's Motion. Simply put, RB presents the Court with no reason to compel Tufco to provide further responses to these interrogatories.

### 2. Tufco's Other Contracts (RFP No. 6, Interrogatory No. 8, Set 1)

RB demands irrelevant and confidential information about Tufco's relationships with other customers. In particular, RB demands that Tufco identify its other customers (Interrogatory No. 8, Set 1) and that it produce its agreements with those customers (RFP No. 6). These requests are enormously overbroad. They are not sufficiently limited in time, and they are not even limited to contracts for disinfecting wipes (they request the contracts for *all* goods Tufco produces regardless of whether the goods are comparable to those ordered by RB or whether they are converted on the same manufacturing lines). Because the agreements at issue are also confidential (and in particular contain confidential information belonging to third parties), they should not be ordered produced unless they are actually relevant and necessary to the claims in this case — and they are not.

### 3. Communications With and Regarding Other Customers (Interrogatories Nos. 6–7, Set 2 and RFP Nos. 3 & 7)

These requests are wildly overbroad and would expand the scope of discovery in this case beyond any reasonable limits. Specifically, RB demands the production of "all communications" between Tufco and "any other person or entity relating to [Tufco's] production or supply of goods

10384690.1

to that person or entity" from January 1, 2020 to September 1, 2021 (RFP No. 3) and "all communications and documents relating to contracting for production or supply of goods" from January 1, 2020 to July 1, 2021 (RFP No. 7). (Futterman Cert., Ex. A at 5, 7–8.) RB also demands that Tufco identify all instances where it was unable to fulfill product orders (Interrogatory No. 6, Set 2) and all civil matters, lawsuits, or arbitrations to which Tufco has been a party in the relevant time period (Interrogatory No. 7, Set 2). (Futterman Cert., Ex. K at 16–17.)

Even limited to the four nonparty competitor contracts RB mentions in its motion, these requests amount to an unwarranted fishing expedition into communications with each nonparty customer, regardless of whether the contract at issue bears any relationship to this case. As an example, RB repeatedly makes reference to Tufco's relations with its former customer Spartan. As with others, that business relationship and subsequent dispute is of no relevance here because, among other reasons: Tufco did not have a Supply Agreement or similar volume or standing agreement with Spartan (Spartan simply submitted purchase orders); Spartan's products were industrial wipes not consumer disinfecting wipes; and Tufco did not produce any wipes for Spartan after 2020 (the Supply Agreement at issue only required that production begin months into 2021). (Mosely Decl., at ¶ 6.) The terms of each contract were separately negotiated with third parties, and they do not mirror the RB language negotiated and then used in the Supply Agreement, they all stem from different business relationships, histories, and priorities.

As noted with Spartan, not all of the agreements even included a Supply Agreement equivalent let alone "take-or-pay" provisions (the format of agreement where, as here, parties agree to set mutually enforceable penalties if they either could not meet minimum quantity levels of purchases or production for a set amount of time absent certain applicable excusing factors), and not all of them even pertain to consumer disinfecting wipes. Even with respect to somewhat similar

11

agreements, it would place an undue burden on Tufco to be responsible for redacting third-party trade secrets across hundreds of thousands of documents.[9]

RB has not identified a single legitimate (let alone reasonable) use for the massive amount of irrelevant information it seeks by this Motion. Specifically, RB argues that the fact that Tufco was able to produce wipes for other customers (who had ordered different products many of which were being produced on different production lines) demonstrates that Tufco was somehow "selectively" performing its contracts.[10] However, RB already has this information. Tufco has produced robust data regarding its actual production of products during the relevant timeframe, and its internal communications about same. For example, as described above, Tufco produced spreadsheets detailing product type, volume, capacity, and pricing terms. (Mosely Decl. Ex. 1). Further, Tufco produced in-depth and meticulous spreadsheets depicting its staffing deployment during the relevant timeframe. For example, Tufco produced TUFCO_RB_0058907, which is a spreadsheet depicting the granular details of Tufco's staffing as of March 11, 2021 (Tufco regularly updated this spreadsheet on approximately a weekly basis and also produced those spreadsheets). (*See* Mosely Decl., Ex. 4.) The first tab of the spreadsheet sets forth the number of employees in each department of the company. The subsequent tabs contain detailed information

---

[9] Notably, RB could have, but chose not to agree to limit the scope of the Motion or of the request as proposed by Tufco to address *force majeure* notices Tufco sent in the relevant timeframe in addition to the top level production material that Tufco provided, less client identification. Instead of agreeing to any such limitation, RB opted to pursue the entirety of its overbroad requests, which should be denied.

[10] RB also uses its motion to compel as an opportunity to wrongly suggest that Tufco did not produce any wipes at all. (Docket 67-3, at 2) ("Tufco, however, *did not produce a single Lysol canister* under the Supply Agreement.") However, this ignores: the other Lysol products Tufco was producing for RB as part of their business relationship; the TBone products at issue in this case and that Tufco did produce for RB; and also the fact that it was RB that purported to terminate the agreement to purchase Lysol canisters. (Docket 38, at ¶ 4.)

about how each department is staffed, including fulsome information about the staffing of Tufco's canister and flat pack production lines. Importantly, both show *significant* numbers of open positions (with canister production alone having 108 of 188 positions open). In short, RB already has the information it claims to need, without delving into the specifics of its competitors confidential and trade secret data. There is simply no reason to permit an overly burdensome fishing expedition into further confidential information that would be cumulative and unnecessary.

Finally, the burden of producing the requested records would be a massive and unreasonable expansion of the scope of discovery in this case. Tufco would be required to collect and review literally millions of pages of emails, reports, and spreadsheets and redact same to avoid disclosure of its customers' confidential information. (Mosely Decl., ¶ 4.) Indeed, just a single dispute with one other customer of Tufco's generated 2,358,675 pages of documents for review. (*Id.*) For Tufco to take on this burden, multiplied by each other customer, with hefty needs for redaction, would be grossly unreasonable and the potential harm to third-parties, evidenced by RB's own allegations in the recently dismissed cause of action for breach of confidentiality, far outweighs the benefit of cumulative information in documents full of highly sensitive competitor data.

Further, some of the contracts at issue were amended and intensively negotiated several times over the course of years. Taking one agreement out of the context of the business relationship would artificially distort the totality of any such business or contractual relationship, and to produce the associated communications would be remarkably burdensome and turn this case into a series of mini-trials about Tufco's other contracts with other customers for the manufacture of other products not at issue here. RB has not—and cannot in good faith—offer any counterbalance

that would outweigh the immensity of this burden though these positions were known to RB as discussed in the parties' meet-and-confer efforts.

### D. RB's Request for Attorneys' Fees Should Be Denied

RB's request for its attorneys' fees associated with filing its motion is inappropriate and should be denied. Under Federal Rule of Civil Procedure 37(a)(5)(A)(2), a court "must not" order the payment of attorneys' fees if "the opposing party's nondisclosure, response, or objection was substantially justified." Here, RB makes no argument *at all* that Tufco's position was unjustified, and indeed RB has taken highly similar positions that its internal information is confidential and not subject to discovery. Indeed, Tufco's position *is* substantially justified. Courts in this circuit have repeatedly held that a party is substantially justified in objecting to the production of confidential information. *See Johnson v. Sprung*, 2016 WL 11663763, at *3 (E.D. Wis. May 19, 2016) (finding substantial justification where "[d]efendants made a reasonable legal argument in treating the reports as privileged"); *Thermal Design, Inc. v. Guardian Bldg. Prod., Inc.*, 270 F.R.D. 437, 439 (E.D. Wis. 2010) (finding objection to production of confidential settlement agreement to be "substantially justified" such that "an award of costs and fees is inappropriate.") Here, given that RB does not address the issue of whether Tufco's objections were substantially justified, the Court should conclude in the affirmative and decline to award costs and fees.

### CONCLUSION

For the foregoing reasons, and such additional reasons as may be presented by Tufco, including at any hearing on this Motion, the Court should deny RB's motion to compel in its entirety.

Dated: October 4, 2024

By: */s/ Laith D. Mosely*
Laith D. Mosely
RAINES FELDMAN LITTRELL LLP

1900 Avenue of the Stars, 19th Floor
Los Angeles, CA 90067
Phone: (310) 440-4100
Email: lmosely@raineslaw.com

By: */s/James F. Cirincione*
James F. Cirincione, SBN 1086061
Jeffrey A. Conen, SBN 1011268
Hansen Reynolds LLC
301 N. Broadway, Suite 400
Milwaukee, WI 53202
Phone: 414-455-7676
Email: jcirincione@hansenreynolds.com
  jconen@hansenreynolds.com

*Counsel for Plaintiff, Tufco, L.P.*