## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

TUFCO L.P.,

       Plaintiff,

    v.                          Case No. 1:21-cv-1199-WCG

RECKITT BENCKISER (ENA) B.V.

       Defendant.

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION PURSUANT TO FED. R. CIV. P. 37

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................... 5

II.     FACTUAL BACKGROUND ................................................................... 7

        A.      The Parties' Allegations ............................................................. 7

        B.      Tufco's Constant Efforts to Obtain Relevant Customer Communications ............ 9

        C.      The Smoking Guns .................................................................... 12

III.    LEGAL ARGUMENT ............................................................................. 16

        A.      Bases for Sanctions .................................................................. 17

                1.      Rule 26(g) ..................................................................... 17

                2.      Rule 37(c) ..................................................................... 19

        B.      In the Alternative, the Court Should Compel RB to Comply with Discovery, Extend Discovery Deadlines, and Award Tufco its Reasonable Attorneys' Fees and Costs ............................................... 21

IV.     CONCLUSION ........................................................................................ 22

**<u>TABLE OF AUTHORITIES</u>**

**<u>Cases</u>**      **<u>Page(s)</u>**

*Bernal v. All Am. Inv. Realty, Inc.*,
    479 F. Supp. 2d 1291 (S.D. Fla. 2007) ................................................................18

*Brown v. Tellermate Holdings Ltd.*,
    No. 2:11-CV-1122, 2014 WL 2987051 (S.D. Ohio July 1, 2014)..........................19

*Chicago Joe's Tea Room, LLC v. Vill. of Broadview*,
    94 F.4th 588 (7th Cir. 2024) .................................................................................21

*David v. Caterpillar, Inc.*,
    324 F.3d 851 (7th Cir. 2003) .................................................................................20

*DR Distributors, LLC v. 21 Century Smoking, Inc.*,
    513 F. Supp. 3d 839 (N.D. Ill. 2021) ..............................................17, 18, 19, 20, 21

*e360 Insight, Inc. v. Spamhaus Project*,
    658 F.3d 637 (7th Cir. 2011) .................................................................................20

*Maynard v. Nygren*,
    332 F.3d 462 (7th Cir. 2003) .................................................................................20

Teva Pharms. USA, Inc. v. FDA,
    514 F. Supp. 3d 965 (D.D.C. 2021). .....................................................................19

**<u>Statutes</u>**      **<u>Page(s)</u>**

Federal Rules of Civil Procedure 26(a) ......................................................................19

Federal Rules of Civil Procedure 26(e) ......................................................................19

Federal Rules of Civil Procedure 26(g) ....................................................6, 9, 17, 19

Federal Rules of Civil Procedure 26(g)(1)................................................................17

Federal Rules of Civil Procedure 26(g)(3)............................................................18, 19

Federal Rules of Civil Procedure 37 ...........................................................................5

Federal Rules of Civil Procedure 37(a)(5)(A) ...........................................................21

Federal Rules of Civil Procedure 37(b)(2)(A)(i)–(vi) ...............................................20

Federal Rules of Civil Procedure 37(c) ..........................................................18, 19, 20

Federal Rules of Civil Procedure 37(c)(1)..................................................................20

Federal Rules of Civil Procedure 37(c)(1)(C) ..............................................................20

**Other Authorities**                                                               **Page(s)**

Abigail P. Harvey et al., *Longitudinal Monitoring of SARS-CoV-2 RNA on High-Touch Surfaces in a Community Setting,* 8 ENVTL. SCI. & TECH. LETT. 168 (2021) ..........................................................................................................................8

Centers for Disease Control, CDC Archive, *Science Brief: SARS-CoV-2 and Surface (Fomite) Transmission for Indoor Community Environments* (Mar. 24, 2021), https://archive.cdc.gov/www_cdc_gov/coronavirus/2019-ncov/more/science-and-research/surface-transmission.html ....................................................8

Eric A. Meyerowitz et al., *Transmission of SARS-CoV-2: A Review of Viral, Host, and Environmental Factors.* 174 ANN. INTERN. MED. 69–79 (Jan. 2021)................................8

Plaintiff Tufco L.P. ("Tufco"), for its Memorandum of Law in Support of its Motion Pursuant to Fed. R. Civ. P. 37, states as follows:

## I.   <u>**INTRODUCTION**</u>

The circumstances behind this motion are unfortunate, but not unforeseen by the Court. As the Court is aware, Tufco has long sought to probe RB's questionable claims that Tufco's alleged breach of contract forced RB to disappoint its customers by canceling millions of dollars in orders of Lysol wipes. RB claims that this led to lost profits as well as a litany of exceedingly vague claims about damaged customer relationships.

Having reason to believe that customers were in fact *reducing* their orders during the relevant timeframe due to waning demand for the product with the rollout of the COVID-19 vaccines and guidance that transmission was primarily airborne and not through surface contact, Tufco requested the opportunity to examine RB's email correspondence with its customers about these cut or reduced orders. Tufco hit a brick wall: after months of copious meet and confer correspondence, RB summarily contended that no such correspondence existed because all such communication was handled exclusively through the black box of RB's SAP ordering system. Tufco found this claim difficult to believe, and moved the Court to compel the documents' production. RB again represented to the Court that these documents simply did not exist and the best they could do was to produce a spreadsheet of about 186,000 rows concerning purchase orders devoid of context or back up, nonetheless leading the Court to terminate Tufco's motion without either granting or denying it. However, the Court invited Tufco to return to request sanctions should Tufco later uncover a "smoking gun" document that proved RB's representations false.

Tufco has now found some of those smoking gun documents. Contrary to RB's repeated representations that such documents do not exist, Tufco has now discovered (via third-party

subpoenas) that RB engaged in the expected email communications with its customers regarding reductions and cancelations of orders of Lysol wipes, including in planning and forecasting based on anticipated demand and RB's allocations.[1] These emails are more than simply relevant and responsive to Tufco's request for production: they directly discuss customer oversupply of Lysol wipes and significantly undermine RB's affirmative claims, showing that RB's purported termination of the Supply Agreement at issue was mere pretext to avoid receiving products it did not need.[2]

Tufco respectfully requests that the Court impose sanctions pursuant to Fed. R. Civ. P. 26(g) and/or 37(c) to level the playing field. At considerable expense, Tufco was able to subpoena a tiny subset of RB's customers, but is in no position to obtain all of RB's customer correspondence via subpoena. Moreover, discovery closes contemporaneously with the filing of this motion. This situation clearly merits monetary sanctions in the form of an award of attorneys' fees for this and the underlying Motion to Compel. However, in addition to fees, the Court is left with essentially two directions to redress the prejudice Tufco has undeniably suffered. The first is the most equitable: the Court can and should preclude the damages theories that RB was protecting by withholding the requested documents and grant adverse inferences

---

[1] During the pandemic-related rise of disinfecting wipe demand, RB was "allocating" inventory amongst its customers. But—as the subpoenaed documents reveal—once demand projections proved overly optimistic and customers were in fact ordering below their allocated amounts, Lysol disinfecting wipes were removed from the allocation list. RB's customers were informed that the Lysol disinfecting wipes at issue here were no longer to be allocated (so customers could order to their desired volumes) within a month after the production start date of the contract at issue.

[2] Notably, RB's Director of Logistics at the time testified at deposition on June 23, 2025, that, due to a massive oversupply of disinfecting wipes, RB's hygiene group (the group responsible for Lysol wipes), which had maintained 4 warehouses nationwide (referred to by RB as "Logistic Centers") through 2020, was forced to lease an additional 10–13 Logistic Centers between the Spring through Summer of 2021 to store the massive oversupply of Lysol disinfecting wipes. (Mosely Decl. Ex. A, 33:13–36:4.)

against RB based on the small subset of documents that Tufco was able to obtain in short order. The second direction would be to allow for the reopening of discovery and ordering RB to search for and produce all of the documents it ought to have produced a year ago. Tufco is David to RB's Goliath. Delaying trial on this matter and adding yet more expensive and dilatory discovery would disproportionately disadvantage Tufco. Given that option two would be disruptive to the Court's schedule and impose significant costs upon Tufco, Tufco respectfully requests preclusion sanctions (and only requests the second option in the alternative).

## II. FACTUAL BACKGROUND

### A. The Parties' Allegations

As the Court is already aware of the Parties' allegations as they pertain to this discovery issue by virtue of Tufco's prior Motion to Compel, Tufco proceeds with a limited explanation of the facts. (*See* Dkt. 96). Tufco and RB entered into a Supply Agreement ("Supply Agreement") under which Tufco was to manufacture pre-set monthly amounts of disinfecting wipes for RB, for two years. (Dkt. 1 at ¶¶ 8–12). If Tufco failed to produce the specified monthly amounts for certain reasons other than *force majeure*, Tufco would owe penalties to RB. (*Id*.). If RB failed to purchase the specified monthly amounts, RB would owe penalties to Tufco. (*Id*.). The parties entered into the Supply Agreement on August 1, 2020, with Tufco to begin shipping out disinfecting wipes in March of 2021. (Dkt. 1 at ¶¶ 7, 13).

In the ramp-up period leading up to March of 2021, Tufco purchased machines to create entire new production lines in order to significantly increase its production capacity, so that it could produce as specified. It spent millions of dollars to do so. Unfortunately, also during that ramp-up period, Tufco faced new stay-at-home orders and other challenges arising from a tragic spike in COVID-19 fatalities in and around Brown County, coupled with a new strain of the COVID-19 virus that caused labor shortages, making it impossible for Tufco to hire enough

employees to run all the necessary production lines in time for March orders. On the other hand, RB was confronted with an unprecedented reduction in demand from its customers as the vaccines started to roll out in the months leading up to March 2021 and as it became understood that COVID-19 was transmitted primarily through airborne droplets rather than contact with contaminated surfaces or objects.[3]

The labor shortages caused Tufco to delay the beginning of its production of RB's disinfecting wipes by months. (Dkt. 1 at ¶ 13). But instead of accepting Tufco's declaration of *force majeure* (or rejecting the *force majeure* declaration and demanding the penalties contemplated by the parties in the Supply Agreement), RB purported to terminate the entirety of its two-year commitment to purchase canister wipes.[4] (Dkt. 22). After asking Tufco to stop producing disinfecting wipes, and waving off available capacity to cover the purported shortfall in these products, incredibly, RB is now suing for lost profits *for the entire two-year period*, notwithstanding the fact that RB cancelled the Supply Agreement *precisely because it knew it*

---

[3] Scientific journals recognized, for example, by January of 2021 that there was little to no evidence that COVID-19 was transmitted via contact with surfaces. Eric A. Meyerowitz et al., *Transmission of SARS-CoV-2: A Review of Viral, Host, and Environmental Factors*. 174 ANN. INTERN. MED. 69–79 (Jan. 2021) ("There is currently no conclusive evidence for fomite or direct contact transmission of SARS-CoV-2 in humans."). *See also* Abigail P. Harvey et al., *Longitudinal Monitoring of SARS-CoV-2 RNA on High-Touch Surfaces in a Community Setting*, 8 ENVTL. SCI. & TECH. LETT. 168 (2021). This was formally recognized by the Centers for Disease Control in March of 2021, which released guidance acknowledging that "[t]he principal mode by which people are infected with SARS-CoV-2 (the virus that causes COVID-19) is through exposure to respiratory droplets carrying infectious virus," and that though "[i]t is possible for people to be infected through contact with contaminated surfaces or objects (fomites). . . the risk is generally considered to be low." Centers for Disease Control, CDC Archive, *Science Brief: SARS-CoV-2 and Surface (Fomite) Transmission for Indoor Community Environments* (Mar. 24, 2021), https://archive.cdc.gov/www_cdc_gov/coronavirus/2019-ncov/more/science-and-research/surface-transmission.html.

[4] RB also had a commitment under the Supply Agreement to purchase a separate type of disinfecting wipe known as "T-Bone." RB ultimately repudiated that commitment as well, but delayed doing so until it found a manufacturer willing to undertake this project on RB-advantageous terms—*i.e.*, without a set term and set volume contract.

*could not sell those wipes*. (*See* Mosely Decl. B at 2). In addition, RB claims a laundry list of speculative damages sounding in "lost business opportunities," "lost customers," and "general harm to RB's business reputation and injury to goodwill." (*Id.*). All of this gives rise to the obvious question: were orders cut because of a lack of supply? Or instead were they reduced because the customers no longer needed the previously anticipated volumes of disinfecting wipes? Tufco therefore engaged in efforts to obtain RB's correspondence with its customers, to find out for itself.

**B.      Tufco's Constant Efforts to Obtain Relevant Customer Communications**

Tufco first sought the documents at issue over a year ago with its August 15, 2023 Request for Production No. 10, requesting "All Documents and Communications relating to Your contention in paragraphs 97 and 106 of the Counterclaim that RB was forced to amend or adjust its orders based on Tufco's alleged inability to produce." (*See* Mosely Decl. Ex. B.) On June 7, 2024, RB provided a supplemental response to the RFPs, which with respect to RFP No. 10 included a slew of objections but also an ultimate statement that it would produce the responsive documents, without any statement that documents would be withheld.[5] (*See* Mosely Decl. Ex. C at 21.) The parties' meet and confer correspondence established clearly that RFP 10 sought communications about cuts, without regard for whether they were RB internal emails or emails with customers. (*See* Mosely Decl. Ex. D at 4) (discussing RFP 10 as seeking "RB's internal communications and its external communications with its customers, discussing alleged cuts to the orders (or any other document that communicated an order cut. . . .). Tufco also explained the need for these documents, as there may "be other reasons for the cuts, given that during the time period in question, the spike in demand for home disinfecting wipes dropped.

_____

[5] These responses were signed by counsel as required under Fed. R. Civ. P. 26(g). (*Id.* at 42.)

Tufco is well within its rights to probe the possibility that none of the cuts RB claims are attributable to Tufco." (*Id*. at 4.)

The parties exchanged *extensive* meet and confer correspondence over RB's deficient discovery responses.[6] But then, on January 14, 2025, RB for the first time represented that the communications Tufco had been seeking for months did not exist. (*See* Mosely Decl. Ex. E at 2–3.) ("[W]hen a cut does occur the communication is computer to computer, system to system – there were no emails or other communications regarding the cut."). Tufco was ultimately forced to file a Motion to Compel on January 24, 2025. (*See* Dkt. 96). The Motion to Compel included a request to compel responses to RFP No. 10, and specifically noted that "RB has failed to produce *any* correspondence or documents relating to any particular cut in orders." (*See* Dkt. 96 at 12.) In opposition to the motion, RB notably *did not* contend that it would be overly burdensome to locate these documents, or that Tufco was not entitled to them. Instead, RB again insisted that the documents never existed at all:

> There are no emails, direct communications, or non-automated notifications or related correspondence regarding the cuts, or reason for the cuts, not otherwise available in the chart provided. Nor are there any written agreements with the customers at issue except for standard vendor agreements/terms and conditions. Purchase terms are communicated from customers to Reckitt via its electronic data exchange and stored in SAP's manufacturing software. ***RB is not withholding any documents or misrepresenting its limitations in answering Tufco's RFPs, as Tufco so baselessly alleges, the documents sought simply do not exist.***

(Dkt. 99 at 13–14) (citations omitted) (emphasis added).

---

[6] These efforts are discussed in detail in Tufco's Motion to Compel. (*See* Dkt. 96 at 4–8.)

In its reply brief, Tufco registered its concern that these documents may, in fact, exist.[7] At the Motion to Compel hearing, RB again represented that "there's no communication—so there's no—when an order is cut, there's no communication back from the client saying, why is this cut? Why is that cut?," and that "[t]here are no communications that we are aware of with customers." (Mosely Decl. Ex. F at 23:6–9, 27:4–5.) The Court ultimately terminated Tufco's Motion to Compel (rather than granting or denying it) in reliance of the representation that the documents did not exist. (*Id.* at 28:23–29:9) (noting that from what Counsel said, "he has produced the information, the evidence, responses to discovery that his client has, and if that's all they have, I can't very well order them to produce more information.") (*See also* Dkt. 110 ("The [C]ourt neither grants nor denies the motion but will terminate it. The court invites the Plaintiff to renew the motion for attorneys' fees and sanctions in the event information reveals that Reckitt was either withholding or not producing the necessary information.").

Tufco sought to make the record crystal clear as to the representations made: "I just want to make one thing clear given where—where Your Honor is at at the moment, and that's that there's been a representation that there are no communications with clients. . . ." (Mosely Decl. Ex. F at 32:10–20.) The Court specifically asked for RB's response, which was that "nothing is being purposefully withheld. Nothing has been purposely withheld." (*Id.* at 32:23–25). The Court noted that should this representation prove untrue, Tufco could be entitled to sanctions including attorney's fees, costs associated with seeking this information via subpoenas to third parties, and/or a denial of RB's damages claims. (*Id.* at 28:18–29:9, 36:2–15.) As the Court put it: "if they don't have 'em, they don't have 'em, but on the other hand if – if there's – you know, you

---

[7] Tufco noted that it seemed "highly unlikely" that "there was absolutely no email correspondence about cut orders." (Dkt. 96 at 13).

find a smoking gun or things like that, please return. . . . " (*Id*. at 36:8–11.) In concluding the Motion, the Court noted that "if you find in the course of the further discovery and to damages and into the other issues that remain that there were documents that were withheld or this claim of no merit at all, feel free to seek whatever remedies you think you might be entitled to." (*Id*. at 36:19–25).

### C.    The Smoking Guns

Tufco proceeded to issue subpoenas to several RB customers in order to obtain the communications at issue. Some of the customers provided documents to Tufco in time for this Motion. Those document productions not only included correspondence *about* cuts in orders (which was all that was required to become responsive to RFP 10), but many included smoking gun documents showing that ***RB was actively attempting to sell the products at issue to customers who did not want them because of oversupply.***[8]

Tufco emphasizes that these documents are a subset of a subset—Tufco managed to get subpoena responses from only a handful of customers, and even then, needed to significantly narrow the production using restrictive search terms in order to minimize the burden to non-parties. In other words, it is nearly certain that there are additional responsive emails with each of the customers who responded to the subpoenas, not to mention responsive emails with RB's remaining other customers. But what has been produced makes it exceedingly clear that, in contravention RB's previous representations, it was in *constant* email contact with its customers about its orders.

---

[8] Some of the customers were discussing flat packs of lemon lime disinfecting wipes versus canisters, though this is a distinction without a difference because customers appeared to view the products as fungible. (Mosely Decl. at G). ("[A]t this time we do not need [canister] wipes. We are trying to focus on selling the flat packs we have.").

- **████████** ("Customer A")

  o On March 1, 2021 an RB employee contacted Customer A to try to sell them "an additional allocation on Lysol 80ct Canisters [a product at issue in the Supply Agreement] this month." (Mosely Decl. Ex. G). Customer A responded: "at this time we do not need the wipes. We are trying to focus on selling the flat packs we have. Thanks anyway." (*Id*.)

  o On March 11, 2021, Customer A noted that "[m]any locations are reaching out to procurement asking to halt their reoccurring orders [of Lysol wipes] due to overstocking." (Mosely Decl. Ex. H.) Customer A was in fact looking for RB's help to find ways to use up existing inventories of wipes. (*Id*.)

  o On May 12, 2021, RB contacted Customer A: "In an effort to overdrive sales of 80ct Lysol Flatpacks (and wipes in general) Reckitt is implementing a new pricing strategy effective immediately. As you already have significant supply on hand, I'm able to provide this as a rebate. . . and as a cost reduction on future flatpack purchases.") (Mosely Decl. Ex. I) RB characterized this as an effort to "help you quickly move though your existing stock of flatpacks but also to create ongoing demand for our flatpacks." (*Id.*)

- **████████** ("Customer B")

  o On March 25, 2021, Customer B informed RB: "Please note: we have decided not to order any ████ # 1018488 [Lysol Wipes Flatpack 80 ct.] this week. Right now, we still have enough stock." (Mosely Decl. Ex. J at 2.)

- **████████████ ("Customer C")**

  o On May 21, 2021, Customer C distributed to RB notes from a meeting with RB, reflecting issues from drastically increased supply: "A lot of late issues are related to Reckitt LC's [logistics centers]. They're becoming constrained to due increasing volumes from items coming off allocation." (Mosely Decl. Ex. K at ████████ Typed notes from an earlier, April 1, 2021 call also indicated that disinfecting wipes "can return to regular buying." (*Id*. at ████████

- **████████████████████ or "Customer D")**

  o On February 17, 2021, RB attempted to tantalize Customer D with truckloads of lemon lime disinfecting wipes. (Mosely Decl. Ex. L) ("Guys, We have a big opportunity to get some **trucks** of wipes.") (emphasis original). Customer D responded that "We're not going to stock pile another 5,000 cases of an item which has no history of sales in our Region. . . .").

- **████████████ ("Customer E")**

  o On September 30, 2020, RB contacted Customer E to discuss supply issues, telling them that "[d]ue to multiple changes we had to make and the high consumption issues we are seeing in the market with Lysol due to Covid, we were unable to meet the October shipment." (Mosely Decl. Ex. M).

  o On January 15, 2021, RB contacted Customer E to advise that there were supply bottlenecks in their network. (Mosely Decl. Ex. N at 2). RB told

the customer that keeping the products in stock would be challenging "[n]ot because we are not providing what we (RB) committed to, but because the demand is going to be SO high. I'm not sure what discussions you've had with Graham but we've had stores selling 50+ units in a day." (*Id.*) Also, notwithstanding its position in this case that Tufco could not have experienced a labor shortage-caused *force majeure*, it told Customer E that factories were "hit pretty hard with Covid," and that "[i]t was difficult getting the necessary labor to hit output production." (*Id.* at 1.)

- ███████████████████ (**"Customer F"**)

  o On March 3, 2021, RB contacted Customer F to inquire why they reduced their orders for Lysol canister wipes. (Mosely Decl. Ex. O) ("I noticed that you only ordered 43% of your allocation. Was there a specific reason for this?"). RB followed up to warn that Customer F's allocation would be "released to other customers." (*Id.*).

  o On March 31, 2021, RB contacted Customer F to tell them that Lysol 80ct canister wipes was "no longer on allocation." (Mosely Decl. Ex. P.)

  o On April 6, 2021, RB again contacted Customer F to remind them that Lysol canister wipes "transitioned off allocation." (Mosely Decl. Ex. Q at 2.)

  o On July 1, 2021, RB contacted Customer F to advise that they "are filling at 100% on all skus except the TBC." (Mosely Decl. at Ex. R) ("TBC" likely refers to a Lysol product called "Toilet Bowl Cleaner").

### III. **LEGAL ARGUMENT**

RB withheld an entire category of documents (customer communications) that was harmful to its tenuous damages claims in this case. Although Tufco was able to use the subpoena process to obtain a small fraction of these communications with specific customers, it only scratches the surface because RB has too many customers (approximately 150) for Tufco to reasonably subpoena. Moreover, discovery closes today (June 30, 2025). Should the Court order RB to search and produce these documents across its servers, it would require extending the discovery deadline and would effectively punish Tufco by requiring it to incur the attorneys' fees associated with continuing discovery. At this stage of the litigation, the only equitable solution is for the Court to preclude the damages theories that RB unfairly bolstered by withholding evidence and allow for related adverse inferences in Tufco's favor and against RB.

Therefore, by this Motion, Tufco respectfully requests that the Court enter an order: (1) barring RB from presenting evidence that it cancelled customer orders as a result of shortages caused by Tufco; (2) granting adverse inferences that as a result of misrepresentations made by RB during discovery in this case, communications between RB and its customers about Lysol's disinfecting wipes products that were withheld from Tufco are deemed to support Tufco's and refute RB's assertions concerning demand for the products at issue in the Supply Agreement; and (3) awarding Tufco its reasonable attorneys' fees and costs associated with (a) this motion; (b) Tufco's prior motion to compel on this topic; and (c) Tufco's efforts to obtain discovery from RB's customers via subpoena.

As a distant alternative, Tufco would renew its prior motion to compel, and requests an order: (1) compelling RB to provide the customer correspondence requested in Tufco's Request for Production No. 10 within thirty (30) days; (2) extending fact discovery by ninety (90) days with the parties to meet and confer as to a new scheduling order; (3) granting Tufco leave to

depose or re-depose any witness(es) it deems necessary, confined to the topics of the documents produced by RB or pursuant to the customer subpoenas; and (4) awarding Tufco its reasonable attorneys' fees and costs associated with (a) this motion; (b) Tufco's prior motion to compel on this topic; and (c) Tufco's efforts to obtain discovery from RB's customers via subpoena.

### A. Bases for Sanctions

The Court is empowered with broad authority to sanction discovery misconduct that appears before it. Here, a number of Federal Rules of Civil Procedure are implicated by the conduct at bar, and each basis for sanctions is discussed in turn.

#### 1. Rule 26(g)

Rule 26(g) provides a straightforward basis for an award of sanctions. It requires that discovery responses must be signed by at least one attorney of record, and provides that by signing, the attorney or party "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: (A) with respect to a disclosure, it is complete and correct as of the time it is made. . . ." Fed. R. Civ. P. 26(g)(1). Although the rule does not require an attorney to certify to the truthfulness of the responses, "it forces an attorney to 'stop and think' about discovery responses and 'certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 952 (N.D. Ill. 2021) (quoting advisory committee's note to 1983 amendment to Fed. R. Civ. P. 26(g).). The rule permits the Court to sanction the attorney signing the discovery disclosures, the party the attorney represents, or both. *Id.*

Unfortunately, here, it is clear that no such reasonable investigation occurred before RB's counsel signed its responses to Tufco's requests for production.[9] Although Tufco has no grounds to speculate as to what discussions have been had between RB and its counsel, it is evident that client and counsel were collectively given notice of an extremely specific category of documents (customer communications) and failed to produce them. Tufco made significant efforts to shepherd RB to finding these documents: Tufco spent months in meet-and-confer sessions explaining what it wanted and why; Tufco filed a motion to compel to obtain the documents, only to be told that the documents did not exist. Tufco even (unsuccessfully) contacted RB *after* the termination of its motion to compel in hopes of obtaining a list of email custodians RB searched, to try to determine why it was that RB was unable to locate these emails. (Mosely Decl. S at PDF 6.) (questioning Reckitt's efforts to identify and search relevant custodians and requesting "(1) a list of each Reckitt disinfecting wipe customer and the Reckitt employees who corresponded with same in writing and (2) your confirmation that each of these custodian's email accounts were searched. . . ."). None of this helped. Any serious effort to inspect RB's correspondence with its own customers would have yielded the emails Tufco has now obtained directly from the customers. Because this obligation to make reasonable inquiry was breached, sanctions are warranted.

A Court "*must* impose sanctions under Rule 26(g)(3) when attorneys fail in their duties 'to make a reasonable investigation to assure that their clients have provided all available responsive information and documents." *DR Distributors,* 513 F. Supp. at 953 (quoting *Bernal v. All Am. Inv. Realty, Inc*., 479 F. Supp. 2d 1291, 1333 (S.D. Fla. 2007) (emphasis added). In the

---

[9] To the extent the Court views this as a failure on RB's part to supplement its responses to Tufco's Request for Production No. 10, then this issue is analyzed under Rule 37(c), discussed further below.

event of a breach of this rule, "sanctions are mandatory," and "even honest mistakes can be sanctionable." *Id.* (citations omitted). Rule 26(g) grants flexibility to the Court in crafting an appropriate sanction, stating only that the sanction must be "appropriate" and "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3). Courts have not hesitated to do so; indeed in *DR Distributors* the court awarded the moving party *entirety* of its attorneys fees (as opposed to Tufco's far more modest request for fees arising from certain specified issues). 514 F. Supp. 3d at 965. Further, in response to violations of Rule 26(g), Courts have also issued orders precluding evidence as appropriate. *See Brown v. Tellermate Holdings Ltd.*, No. 2:11-CV-1122, 2014 WL 2987051, at *25 (S.D. Ohio July 1, 2014) ("The only realistic solution to this problem is to preclude Tellermate from using any evidence which would tend to show that the Browns were terminated for performance-related reasons"). Therefore, Rule 26(g) is an independent basis for the Court to enter the requested relief.

### 2. Rule 37(c)

Rule 37(c) provides for sanctions where a party fails to provide information as required by Rule 26(a) (initial disclosures) or Rule 26(e) (duty to supplement). Here, to the extent RB only became aware of RB's correspondence with its own customers *after* responding to Tufco's Request for Production No. 10 (either by virtue of meet and confer correspondence or the motion to compel hearing), Reckitt has violated its obligation to supplement its responses to that request for production and therefore violated Rule 26(e).

Where a party fails to produce evidence in discovery in violation of Rule 37(c), the rule: (1) precludes the party's use of that evidence at trial unless the failure was substantially justified or harmless; and permits several further forms of relief including (2) allowing an award of

attorney's fees and costs; and (3) allowing the Court to "impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi)." Fed. R. Civ. P. 37(c)(1). Here, though the Court should clearly preclude RB (but not Tufco) from introducing into evidence any of the documents it withheld, this would not be sufficient relief because these documents are harmful to RB. In other words, preclusion does not provide a disincentive to withhold adverse evidence.

Instead, the Court should award Tufco the reasonable attorneys' fees it has requested, and also enter an order precluding RB from introducing evidence that it was unable to supply its customers with disinfecting wipes due to Tufco's purported breach of contract. Both forms of relief are authorized by Rule 37(c)(1)(C), which permits a court to award "payment of the reasonable expenses, including attorney's fees, caused by the failure [to comply]," as well as any relief permitted under Rule 37(b)(2)(A)(i)–(vi), which includes "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Monetary sanctions pursuant to Rule 37(c) can only be awarded against a party and not counsel. *DR Distributors*, 513 F.Supp.3d at 956 (citing *Maynard v. Nygren*, 332 F.3d 462, 470 (7th Cir. 2003).

Both forms of relief are appropriate here. *See DR Distributors*, 513 F.Supp.3d at 969–70 (awarding attorneys' fees and costs as well as evidentiary sanctions); *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 641 (7th Cir. 2011) (striking witness testimony and limiting damages due to discovery abuse). "Sanctions under Rule 37(c) are automatic and mandatory unless the non-movant can establish that the failure was substantially justified or harmless." *DR Distributors*, 513 F.Supp.3d at 956 (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)). Here, there can be no argument that RB was justified in simply not searching for the

information that Tufco repeatedly requested. Nor can it be argued that RB's withholding of evidence was harmless, as Tufco has been deprived of the evidence in question for the entire pretrial fact discovery process. *See DR Distributors*, 513 F.Supp.3d at 973 (quotations omitted) ("Parties incur prejudice because they do not have the benefit of the documents while selecting deponents, taking depositions, conducting third-party discovery, and preparing [their] trial strategy and pre-trial documents."). Therefore, the Court should enter the requested sanctions.

**B.** **In the Alternative, the Court Should Compel RB to Comply with Discovery, Extend Discovery Deadlines, and Award Tufco its Reasonable Attorneys' Fees and Costs**

Though Tufco stresses that this solution is far from its preferred outcome, if the Court does not issue precluding sanctions, at a minimum it should compel RB to produce the requested documents, extend discovery deadlines, and award Tufco its reasonable attorneys' fees. Notably, though, this outcome would have the undesirable effects of bailing RB out of its discovery misconduct, and imposing additional costs on Tufco. *See Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 94 F.4th 588, 604 (7th Cir. 2024) (Chicago Joe's suggested any prejudice could have been cured by reopening discovery. That might have been an option, but it would still have imposed more delay and expense on the Village. When a party like Chicago Joe's has failed to meet its discovery obligations on numerous occasions, it has no right to insist that the district court bail it out.").

Nonetheless, it would be appropriate for the Court to compel RB to produce all relevant correspondence with its customers. In this regard, Tufco incorporates by reference its original Motion to Compel seeking these documents. (Dkt. 96). Further, should the Court grant Tufco's motion to compel, it must award Tufco its reasonable attorneys' fees and costs. *See* Fed. R. Civ. P. 37(a)(5)(A) ("[i]f the motion is granted. . . the court must, after giving an opportunity to be

heard, require the party. . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.").

## IV.     <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Tufco L.P. respectfully requests that this Honorable Court enter an order: (1) barring Defendant Reckitt Benckiser (ENA) B.V. from presenting evidence that it cancelled customer orders as a result of shortages allegedly caused by Tufco; (2) granting adverse inferences that as a result of misrepresentations made by RB during discovery in this case, communications between RB and its customers about Lysol's disinfecting wipes products that were withheld from Tufco are deemed to support Tufco's and refute RB's assertions concerning demand for the products at issue in the Supply Agreement; and (3) awarding Tufco its reasonable attorneys' fees and costs associated with (a) this motion; (b) Tufco's prior motion to compel on this topic; and (c) Tufco's efforts to obtain discovery from RB's customers via subpoena.

///

///

///

///

///

///

///

///

///

///

In the alternative, Tufco renews its prior motion to compel, and requests an order (1) compelling Defendant Reckitt Benckiser (ENA) B.V. to provide the customer correspondence requested in Tufco's Request for Production No. 10 within thirty (30) days; (2) extending fact discovery by ninety (90) days with the parties to meet and confer as to a new scheduling order; (3) granting Tufco leave to depose or re-depose any witness(es) it deems necessary, confined to the topics of the emails to be produced by RB; and (4) awarding Tufco its reasonable attorneys' fees and costs associated with (a) this motion; (b) Tufco's prior motion to compel on this topic; and (c) Tufco's efforts to obtain discovery from RB's customers via subpoena.

Dated: June 30, 2025                          Respectfully submitted,

                                              By:  */s/ Laith D. Mosely*
                                                  Laith D. Mosely
                                                  RAINES FELDMAN LITTRELL LLP
                                                  1900 Avenue of the Stars, 19th Floor
                                                  Los Angeles, CA 90067
                                                  Phone: (310) 440-4100
                                                  Email: lmosely@raineslaw.com

                                                  *Counsel for Plaintiff, Tufco, L.P.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 30, 2025, a true and correct copy of the foregoing was served on all counsel of record via e-mail.

*/s/ Addy Mkawasi*
Addy Mkawasi