IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

TUFCO L.P.,

    Plaintiff,

v.                             Case No. 21-CV-1199

RECKITT BENCKISER (ENA) B.V.,

    Defendant.

**DECLARATION OF MICHAEL R. FUTTERMAN
IN OPPOSITION TO PLAINTIFF'S MOTION PURSUANT TO FED. R. CIV. P. 37**

Michael R. Futterman declares as follows:

1.    I am a partner at the law firm of Duane Morris LLP and one of the attorneys for Defendant Reckitt Benckiser (ENA) B.V. ("RB"). I have handled all of the material discussions regarding RB's positions concerning discovery in this case. I make this declaration based on my personal knowledge (in part based on interviews with RB employees) and in opposition to Tufco's Motion Pursuant to Fed. R. Civ. P. 37.

2.    RB and Tufco engaged in extensive correspondence regarding discovery served by both parties, including Tufco's RFP No. 10, which requested information supporting RB's contention that RB was "forced to amend or adjust its orders based on Tufco's alleged inability to produce."

3.    By email dated September 23, 2024, Tufco stated that it believed RB's previous document productions with respect to RFP No. 10 were incomplete and that Tufco sought "documents that elucidate what specific orders [RB] had to amend or adjust," as a result of Tufco's breach. (*See* ECF 112-9). RB responded that it had already produced

responsive documents, but that it would also produce a 182,111 line excel report representing the details of *every order* (cut or otherwise) during the relevant time period, including the customer names, purchase order numbers, dates, quantities ordered, quantity cut if any, gross values, the *reason for the cuts* (inputted at the time of the cut), and other information synthesizing the thousands of purchase orders during the relevant time period (the "Cut Spreadsheet"). The Cut Spreadsheet is a business record which exports (without modification) all of the relevant native data from RB's SAP database.

4. On several occasions, RB advised Tufco that because RB does not earmark its production for customer purchase orders, it is impossible to determine which particular purchase orders were cut as a result of Tufco's failure to produce as required under the Agreement.

5. In an email dated October 7, 2024, Tufco deemed the Cut Spreadsheet a "responsive document," but an "incomplete response," and made a new request for RB's "external communications with its customers, discussing the alleged cuts to the orders (or any other documents that communicated an order cut, either from RB to the customer or from the customer to RB)." (*See* ECF 112-9 at p. 5).

6. The parties continued to meet and confer about this and other discovery issues. In one such discussion on November 22, 2024, RB explained that there were no customer communications regarding the cuts at issue because RB does not interact that way–– the ordering process, including acceptance, adjustment and rejection of orders, is automated and counsel did not believe underlying communications existed. Counsel for Tufco pushed back, and so RB agreed to diligently continue its search.

7. RB conducted a good faith effort to locate customer communications regarding specific cut orders. RB's good faith effort to locate these additional documents

included interviews of several knowledgeable RB employees as well as targeted searches in RB's document litigation database. I personally interviewed several RB employees (some multiple times), including Matthew Lindsey (Head of Customer Service, North America), Rodolfo Santana (Customer Service Excellence Manager), James Nadeau (Trade Marketing Director, Lysol US), John Yokomizo (SVP of Customer Marketing), Santiago Fernandez (Senior Finance Manager E-Commerce) and Igor Miyasaki (SBA Supply IS – USA), seeking information about the existence and location of customer correspondence regarding cuts. I also interviewed several other RB employees who did not have any information regarding this issue.

8. These employees reported that there was no such correspondence and reiterated that cuts are performed via electronic data interchange ("EDI") connected to RB's SAP manufacturing software/database. Purchase orders are submitted to RB via that EDI. If RB cannot fill the order, a computer message is automatically sent back to that customer's computer through the same EDI system, notifying the customer that the order was "cut."

9. These employees consistently confirmed and represented that, in the usual course of their business and, in light of RB's automated system, there are no direct communications with customers regarding specific cut orders - no emails, direct messages, or non-automated notifications regarding a specific cut or the reasons therefore. Every "communication" occurs computer to computer, system to system.

10. Based upon these representations, with which I had no reason to disbelieve, we reasonably concluded that no customer communication documents concerning specific cut orders existed. Nothing in RB's reasonable, good faith investigation indicated any cuts communications with customers existed and nothing suggested that relying on the results of that investigation was not substantially justified.

11. Attached hereto as **Exhibit A** is a true and correct copy of Tufco's Amended 30(b)(6) Notice dated January 30, 2025.

12. Attached hereto as **Exhibit B** is a true and correct copy of the relevant sections of John Yokomizo's 30(b)(6) Deposition transcript, dated June 9, 2025.

13. Attached hereto as **Exhibit C** is a true and correct copy of the relevant sections of Matthew Lindsey's 30(b)(6) Deposition transcript, dated February 11, 2025.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of July, 2025.

*/s/ Michael Futterman*
Michael Futterman

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 29, 2025, a true and correct copy of the foregoing was filed via CM/ECF PACER system, which will send a notice to all counsel of record.

s/ Michael R. Futterman  
Michael R. Futterman