

1900 Avenue of the Stars, 19th Floor
Los Angeles, California 90067
Main: 310.440.4100
Direct: 424.239.2517

lmosely@raineslaw.com
www.raineslaw.com

August 7, 2025

**VIA E.C.F.**

Hon. William C. Griesbach, U.S.D.J.
United States Courthouse, Room 203
125 South Jefferson Street
Green Bay, Wisconsin 54301-4541

      Re: **Tufco L.P. v. Reckitt Benckiser (ENA) B.V.**
           **Case No. 1:21-cv-1199 (WCG)**

Dear Judge Griesbach:

      I represent Plaintiff Tufco L.P. ("Tufco") in the above-captioned litigation. This letter is in response to the July 31, 2025, letter (Dkt. 127) submitted by counsel for Defendant Reckitt Benckiser (ENA) B.V. ("Reckitt").

      Reckitt has consistently failed to discharge its discovery obligations in this case. As made evident in the briefing on Tufco's currently pending motion for sanctions, Reckitt failed to collect (much less produce) its correspondence with customers about Reckitt's own damages claims, that rest upon speculative theories of lost profits and damaged customer relationships.[1] (See Dkt. 115.) Tufco hounded Reckitt for this information for months, filed a motion to compel the production of the documents, only to have Reckitt represent in open Court that they did not exist. Tufco then had to issue subpoenas to Reckitt's customers, which yielded responsive correspondence with Reckitt that directly contradicts Reckitt's claims at the earlier hearing and its affirmative claims.[2]

      Now, after the close of fact discovery, Reckitt has disclosed entirely new discovery lapses in the form of a tranche of unreviewed communications from four key Reckitt custodians. Reckitt ascribes its failure to produce to a vague hand-off error between Mr. Futterman's firm and prior counsel (Eimer Stahl LLP) — a hand off which occurred about 20 months ago. It is noteworthy, for context, that Mr. Futterman represented Reckitt at the outset of this dispute when document hold letters, demands, and related communications to this contract dispute were exchanged by counsel, before Eimer Stahl eventually appeared as counsel of record (after requiring Tufco to go

---

[1] After Tufco's motion to compel production of these documents was heard, Reckitt searched and produced emails from a single custodian (out of many) who corresponded with a single Reckitt customer.

[2] Tufco will provide further detail on these issues in its upcoming reply in support of its motion.

through service of Reckitt through the lengthy and expensive Hague Convention process). After Mr. Futterman substituted in with his current firm, extensions of deadlines under the Court's Scheduling Order were agreed to, in part to accommodate the hand-off of discovery to current counsel for Reckitt. Yet Reckitt claims it discovered the current issue only after discovery had already closed, and then disclosed the discovery failure to Tufco on July 16, 2025.

Upon learning about this discovery failure, Tufco immediately requested information about the significance of the error, how many documents were involved and what kind of information had not been collected. Despite having nearly a month since identifying the issue, Reckitt has still not provided even a preliminary estimate of the document or page count of the non-duplicative materials, now noting its concern that responsive documents "may" not have been reviewed or produced. Nor has Reckitt described what specific documents were not produced (i.e., a specific timeframe, communications with specific other custodians, communications with customers that were previously represented not to exist, etc.), nor information about what search terms it is applying to the documents.

The passage of time presents significant prejudice against Tufco. Reckitt disclosed that the four custodians at issue are Jessica Ren, Agustin Torres, Johny Rodrigues, and Keyur Gandhi. Two of them (Ms. Ren and Mr. Torres) Tufco already deposed. Two of them (Messrs. Rodrigues and Gandhi) were both disclosed by Reckitt as former employees who could only be contacted through Reckitt's counsel, but whose depositions Reckitt was ultimately unable to facilitate. The Court may recall that, pursuant to Tufco's request, it issued a Hague Convention request for judicial assistance to Mexico to facilitate Mr. Rodrigues's deposition.[3] (See Dkt. 92.). As for Mr. Gandhi, counsel for Tufco traveled cross-country from California to New Jersey for a December 12, 2024 deposition (a date counsel for Reckitt agreed to and stated Mr. Gandhi would be available and that he had been meeting with Mr. Gandhi to prepare). However, the night before the deposition, counsel for Reckitt notified Tufco that Mr. Gandhi was no longer available due to a purported medical issue.[4] Counsel for Reckitt continued to attempt to schedule Mr. Gandhi's deposition until February of 2025, at which point counsel for Reckitt stated that Mr. Gandhi was no longer under Reckitt's control. Thereafter Tufco made extensive attempts to serve Mr. Gandhi with a subpoena (including months of costly private investigator expenses) but was unable to do so.

---

[3] This became necessary because, after months of Reckitt representing in disclosures and discovery that Mr. Rodrigues could only be contacted through Reckitt's counsel, when Tufco ultimately sought Mr. Rodrigues' deposition, Reckitt's counsel then informed Tufco that Mr. Rodrigues was no longer under Reckitt's control.

[4] Contrary to the conciliatory tone of Reckitt's July 31, 2025, letter, Reckitt refused to cover any expenses Tufco incurred for Mr. Gandhi's last minute and suspect failure to appear for a properly noticed and coordinated deposition.

Reckitt's counsel does not reference other documents it has yet to produce relating to its "demand planning" for the products at issue, which Reckitt represented were forthcoming long ago. Although Reckitt contends that payment of penalties in the Supply Agreement is not a form of performance, Reckitt itself was evaluating early exit costs from the Supply Agreement from its outset based on contract penalties. However, Reckitt's projections for its anticipated needs (demand planning) were wildly wrong, so rather bear the downside risk, it attempted to avoid the much more significant economic downside Reckitt would have incurred by performance of the Supply Agreement. The request on this issue (RFP 42) was propounded on February 14, 2025. It was only on June 23, 2025, after months of meeting and conferring, that Reckitt produced search hit lists. Based on Reckitt's representation that these documents would be produced (and Reckitt's agreement that it would not oppose a later Tufco motion to compel on the basis that fact discovery has closed), Tufco had hoped to resolve this issue amongst the Parties. Reckitt most recently promised to produce these documents by July 11, 2025, but did not do so.

The discovery dereliction brought to the Court's attention by Reckitt here creates two principal concerns: cost and fundamental fairness. With respect to cost, it is apparent that Reckitt's discovery failures are likely to impose huge financial costs on Tufco. Counsel's letter mentioned a review team of eight contract lawyers, which indicates a sizable production of documents that Tufco will need to review and analyze. Witnesses will likely need to be re-deposed, experts will likely need to update their reports, and strategies may develop or change. Essentially allowing these flood gates to be reopened will cost Tufco additional months of ongoing legal expense it should not have to incur. Notably, Reckitt was, at all relevant times to this case, a 40,000-employee global company with a market capitalization of over fifty billion dollars, whereas Tufco is ultimately a family-owned company with a single production facility.[5] While the ongoing monthly cost of this litigation may be imperceptible to Reckitt, it is highly material for Tufco. Especially since Tufco already paid millions of dollars to expand its production capacity to produce the disinfecting wipes under a contract that Reckitt decided it no longer needed within a few months of the two-year contract term) as a result of sharply reduced demand and massive oversupply.

There is also the issue of fairness. Beyond the unavoidable fading of memories with the passage of time, Reckitt has shed a remarkable number of witnesses from its control, including individuals central to the relationship between Reckitt and Tufco who live outside the United States, or on the East Coast, or whose whereabouts are unknown. The additional passage of time is prejudicial to Tufco's ability to call witnesses and present its claims and defenses.

---

[5] Notably, notwithstanding this disparity in the relative resources and size of the parties, tiny Tufco's discovery productions have dwarfed Reckitt's productions in this case. Tufco produced 34,689 documents made up of 125,584 pages, while RB has produced a paltry 10,667 documents made up of 40,014 documents. Tufco has repeatedly noted to Reckitt that this disparity was suspicious and indicative of a less-than-forthcoming attitude towards compliance with discovery obligations.

Also, Reckitt knows the contents of this tranche of documents that it rediscovered after the close of fact discovery. Tufco has no idea what is in them, and therefore is not in a position to decide whether it makes more sense to simply seek their exclusion (as would be a matter of course for undisclosed documents) or whether these are documents that would have significant impact on how Tufco would have proceeded in organizing its claims and defenses and pursuit of discovery in a manner that warrants further action. It would be manifestly unfair to permit this significant disruption in the litigation in order to facilitate a late production of documents with only Reckitt knowing the content.

Finally, Reckitt's request for the reopening of discovery (this is not an "extension" as counsel suggests because fact discovery has already closed) is procedurally improper by letter. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."). There is no excuse for why Reckitt delayed so long to request further changes to the Court's Scheduling Order — changes that both Reckitt and Tufco represented it would not make as part of the most recent stipulated amendment — or why it did not do so by motion as required by the Rules.

Expert reports are due one business day from the date of this telephonic conference. Tufco intends to present the reports in accordance with the Court's Order. Reckitt should be ordered to adhere to the Scheduling Order, to produce documents that it improperly withheld, whether due to inadvertence, mistake, sloppiness, or worse, and once it has done so, the decision to move to exclude these documents, reopen discovery, or pursue other sanctions or relief, should be left to Tufco's discretion.

Respectfully,

Laith Mosely
Raines Feldman Littrell LLP