UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**TUFCO L.P.,**

        **Plaintiff,**

        v.                              Case No. 21-C-1199

**RECKITT BENCKISER (ENA) B.V.,**

        **Defendant.**

---

### DECISION AND ORDER GRANTING
### PLAINTIFF'S MOTION FOR SANCTIONS

---

In this breach of contract action, Plaintiff Tufco L.P. brought this action asserting a breach of contract claim against Defendant Reckitt Benckiser (ENA) B.V. (hereinafter referred to as "RB"). RB brought several counterclaims. Dkt. No. 38. This matter comes before the court on Tufco's motion for sanctions pursuant to Federal Rules of Civil Procedure 26 and 37. The court held oral argument on the motion on November 14, 2025. For the following reasons, the motion will be partially granted.

### BACKGROUND

Tufco manufactures wet wipes. As a result of the COVID-19 pandemic, demand for disinfectant wipes exploded. RB sells Lysol disinfectant wipes and other similar products. On September 15, 2020, Tufco and RB entered into a Supply Agreement under which Tufco agreed to supply and RB agreed to purchase minimum quantities of disinfecting wipes over a 22-month term. If either party failed to perform as promised, that party would owe the other monetary penalties. The agreement was set to begin in March 2021.

In January 2021, Tufco began experiencing labor shortages as a result of COVID, and it informed RB that production of RB's wipes may be delayed. On March 16, 2021, Tufco formally

notified RB that it was invoking the agreement's force majeure clause—meaning it could not supply the minimum quantity of Lysol wipes promised for March 2021 and that the force majeure event would continue through April. RB disputed this on the ground that labor shortages did not constitute a force majeure event.

RB ultimately terminated the agreement and asked that Tufco pay $849,000 as a penalty for not producing the wipes. Tufco did not pay the penalty and instead sent RB an invoice for nearly $13.5 million for RB's failure to purchase the minimum number of Lysol wipes for the remainder of the agreement. RB, meanwhile, also told Tufco that it would not be ordering T-Bone Canister wipes. Like the Lysol dispute, Tufco responded by sending RB an invoice for $712,494.00 for its failure to order the minimum number of wipes required under the agreement.

In this case, Tufco asserts a breach of contract claim against RB based on its repudiation of the contract. RB asserts a breach of contract counterclaim against Tufco, alleging that Tufco's breach of contract forced RB to cancel customer orders, resulting in lost profits and damages that RB claimed "amount to at least $10,000,000." Dkt. No. 38 at 39. Tufco contends that, in fact, RB cancelled the Agreement because demand for wipes had drastically fallen as it became known that "COVID-19 was transmitted primarily through airborne droplets rather than contact with contaminated surfaces or objects." Dkt. No. 116-1 at 8. In other words, Tufco claimed that RB terminated the Supply Agreement not because Tufco missed its monthly quota for March but because it was unable to sell the wipes it had agreed to buy from Tufco.

On January 24, 2025, five months before the close of fact discovery, Tufco filed a motion to compel RB to provide further responses and production of documents in connection with its Interrogatories Nos. 7, 8, and 12 and Requests for Production Nos. 10 and 17. Those discovery requests read as follows:

> **Interrogatory No. 7:** IDENTIFY all purchase orders or contracts or prospective purchase orders or contracts that YOU were unable to fulfill as a direct result of YOUR not receiving the wipes YOU bargained for in the SUPPLY AGREEMENT as alleged in paragraphs 156 and 182 of the COUNTERCLAIM.
>
> **Interrogatory No. 8:** IDENTIFY any purchase orders or contracts (other than the ones with TUFCO) for the products to be supplied under the SUPPLY AGREEMENT that YOU terminated, canceled or modified from January 1, 2019, to December 31, 2022.
>
> **Interrogatory No. 12:** SET FORTH THE COMPLETE BASIS for any damages, including the amount of damages, YOU claim to have suffered as a result of TUFCO's actions as alleged in the COUNTERCLAIM.
>
> **Request for Production No. 10:** All Documents and Communications relating to Your contention in paragraphs 97 and 106 of the Counterclaim that RB was forced to amend or adjust its orders based on Tufco's alleged inability to produce.
>
> **Request for Production No. 17:** All Documents and Communications relating to Your computation of Your alleged damages.

Dkt. Nos. 97-2, 97-3. Although the information Tufco sought was essentially the basis for RB's claim that Tufco's alleged breach had cost it more than $10,000,000, RB's response to Tufco's discovery requests consisted of boilerplate objections that the Interrogatory or Request was overbroad, unduly burdensome, vague and ambiguous, calls for confidential information with respect to third parties or commercially sensitive information, and/or was premature. Tufco alleged in support of its motion that despite months of meet and confer efforts, RB had refused to identify the specific orders it contends it was unable to fill as a result of Tufco's alleged breach, refused to produce agreements and related documents that substantiated those orders, and refused to produce any correspondence documenting the reasons for the alleged cuts in its orders. Dkt. No. 96-1 at 1. Tufco argued that discovery responses RB had made suggested that there had been an "unprecedented reduction in demand" for disinfectant wipes that left RB's own warehouses without storage space for additional product. Despite being years into the litigation, Tufco argued

3

that RB had still failed to produce the most basic factual information about the damages it was claiming. As a result, Tufco was unable to prepare its defense. *Id.* at 2–6.

In its response to Tufco's motion to compel, RB asserted that it had "made every effort to comply with Tufco's discovery demands, going above and beyond what is required by the Federal Rules or the Seventh Circuit." Dkt. No. 99 at 1. RB claimed that Tufco sought in its motion "a level of detail in RB's responses that is not required, practical, or possible." *Id.* RB further explained that it had provided Tufco with "a 182,111-line cut report spreadsheet that included details of every order that was cut during the relevant time period, including customer names, purchase order numbers, dates, quantities ordered, gross values, the reason for the cuts, and other information synthesizing the thousands of purchase orders cut," Dkt. No. 100, ¶ 4, a sample of which is at Dkt. No. 101-1. According to RB, the communications Tufco was seeking did not exist:

> There are no emails, direct communications, or non-automated notifications or related correspondence regarding the cuts, or reason for the cuts, not otherwise available in the chart provided. Nor are there any written agreements with the customers at issue except for standard vendor agreements/terms and conditions. Rather, orders are made via electronic purchase order and subject to those standard terms and conditions. Purchase terms are communicated from customers to Reckitt via its electronic data exchange and stored in SAP's manufacturing software. RB is not withholding any documents or misrepresenting its limitations in answering Tufco's RFPs, as Tufco so baselessly alleges, the documents sought simply do not exist.

Dkt. No. 99 at 13–14 (citations omitted). RB also argued that it was premature before expert reports on damages were due to expect it to provide the kind of information Tufco was requesting.

RB reiterated its position at the hearing held on Tufco's motion. On the one hand, RB claimed that the spreadsheet it had provided "has all the detailed information as to every order." Dkt. No. 22 at 22:10–11. On the other hand, to understand the information, one needed the codes that were inserted by someone from the logistic center or customer service. *Id.* at 23:01–03.

4

Apparently, the codes needed to understand the reasons orders were cut were not provided. *Id.* at 26:04–13. But wholly aside from RB's spreadsheet, Tufco was asking for the documented and/or electronic correspondence, communications, and agreements from RB's customers that supported its claim that Tufco's failure to meet its production quotas in March and April had resulted in the kind of damages RB was claiming. As to this information, RB repeated the claim in its brief: they did not exist. In the words of RB's counsel:

> So I just want to be clear. There are no communications that we are aware of with customers. Now, digging in, you know, looking for, you know, a few E-mails that may have to do some with one or two of the force majeure notices on this 182,000 line, I don't think -- you -- I don't even think we would know where to start to look for that.

*Id.* at 27:04–09.

At that point, the court noted that Tufco's suspicions that RB had not provided the information it had was "not unfounded," notwithstanding RB's claim that it had provided all the responsive information it had. *Id.* at 28:13–18. The court further noted that absent further information, RB's damage claim may not survive. While precision isn't essential for a damage claim, the court suggested that more than expert opinion would be needed, especially to prove contract damages in a case like this. *Id.* at 28:01–08. As for Tufco's motion to compel, however, the court concluded that it could not be granted on the record before it. Based on the representations of its counsel that RB had produced the information it had in response to Tufco's discovery requests, there was no basis for the court to order RB to produce more.

At the close of the hearing, the court expressed its concern that there was more information than RB had produced. To be sure, it was difficult to understand how a party can claim millions of dollars in damages caused by a breach of contract and not have more specific information as to how the alleged breach caused such a loss. Yet, if that was what RB was claiming, the court could not order it to produce documentary or electronic information that did not exist. *Id.* at 29:01–09.

5

At the same time, the court noted that Tufco was free to challenge the basis of any damage claim RB would offer after having failed to provide the information Tufco sought. The court also made clear that if Tufco was able to obtain from other sources the information it sought from RB, a "smoking gun," so to speak, Tufco was free to renew its motion and request sanctions against RB for wrongfully withholding information. *Id.* at 36:03–11.

Claiming that it had discovered through third-party subpoenas that RB did engage in email communications with its customers regarding reductions and cancelations of orders, Tufco filed a motion for sanctions pursuant to Federal Rules of Civil Procedure 26 and 37 on July 1, 2025. Tufco contends that it has now found the "smoking gun" that the parties suspected might exist. Noting that it had received responses to significantly narrowed requests from only a handful of RB customers, Tufco claimed the responses showed that, contrary to its previous representations, RB was in direct email contact with its customers about its orders. Dkt. No. 116-1 at 12. Among the responses it received, Tufco highlighted email chains from several RB customers. The first was a March 1, 2021 email from an RB employee trying to sell the customer an additional allocation of Lysol 80ct Canisters, a product at issue under the Supply Agreement during March of 2021. The customer responded: "at this time we do not need the wipes. We are trying to focus on selling the flat packs we have. Thanks anyway." Dkt. No. 117-8. On March 11, 2021, the same customer emailed an RB employee noting that "many locations are reaching out to procurement asking to halt their recurring orders due to overstocking." Dkt. No. 117-9.

On March 25, 2021, another customer informed RB, "[P]lease note, we have decided not to order any Ace #1018488 (Lysol Wipes Flat Pack) this week. Right now, we still have enough in stock." Dkt. No. 117-16. On May 21, 2021, a third customer distributed notes to RB from a meeting with RB, reflecting issues that drastically increased supply: "A lot of late issues are related to Reckitt LC's (logistics centers). They are becoming constrained due to increasing volumes of

items coming off allocation." Dkt. No. 117-17. (The term "allocations" refers to the fact that RB had previously advised its customers that due to expected demand for wipes, it intended to allocate its inventory among its customers. According to Tufco, RB's customers were informed that the wipes at issue were no longer being allocated within a month after the production start date of the Supply Agreement.) On March 3, 2021, another email shows that RB contacted a customer to inquire why they reduced their orders for Lysol Canister Wipes by forty-three percent of their allocation.

On July 31, 2025, RB's counsel filed a letter advising that RB had discovered a substantial number of documents had been withheld from production. Counsel explained that the collections of documents it received from prior counsel did not contain all of the emails from certain custodians and that those documents were not produced to Tufco. Counsel asserted that RB intended to work cooperatively with Tufco to mitigate any negative effects of the supplemental production and that, should the parties need to re-depose any RB employees, RB would cover the costs of the deposition. The court held a telephone conference to address the matter on August 8, 2025, and directed RB to provide supplemental discovery within 30 days.

On October 10, 2025, Tufco filed an amended brief in support of its motion for sanctions. In its amended brief, Tufco argues that RB has failed to participate in good-faith discovery efforts and has withheld information demonstrating a crash in demand and RB's attempts to reduce the supply of wipes. It asserts that RB's newly produced documents require the entire discovery process to be redone. Tufco cites four categories of RB's discovery misconduct. First, it asserts that the combination of Tufco's lack of access to key documents and RB's poorly-prepared Rule 30(b)(6) designees has been prejudicial throughout the case. Second, RB produced less than half of the documents it would ultimately produce before the discovery deadline. Third, after the close of fact discovery, RB disclosed that it had not produced unreviewed communications of four key

7

custodians. RB subsequently produced over 5,800 documents, which it represented were those missing documents. Fourth, RB has failed to disclose decisionmakers and produce Microsoft Teams messages. Tufco requests that the court enter an order:

> (1) compelling Reckitt to produce: (a) all responsive correspondence with its customers; (b) all responsive Microsoft Teams messages; (c) an updated list of email custodians reflecting the higher-level employees who possessed responsive information; and (d) all responsive emails belonging to those custodians;
>
> (2) compelling the depositions of all newly-identified custodians as well as any other witnesses of Tufco's choosing;
>
> (3) ordering Reckitt to pay a percentage (at the court's discretion) of Tufco's legal fees incurred to date, as determined by a fee petition;
>
> (4) granting evidentiary adverse inferences and the automatic authentication of documents whose Reckitt custodians are unavailable to testify at trial;
>
> (5) granting default judgment against [presumably dismissing] RB's Counterclaims; and
>
> (6) granting such further relief as the Court deems equitable and just.

Dkt. No. 138-1 at 30–31.

## ANALYSIS

Tufco seeks sanctions under Rule 26(g) and Rule 37 of the Federal Rules of Civil Procedure. Under Rule 26, lawyers must certify that they have fulfilled their discovery obligations. *See Rojas v. Town of Cicero, Illinois*, 775 F.3d 906, 909 (7th Cir. 2015). When signing a discovery disclosure, request, response, or objection, an attorney certifies to the best of the person's knowledge, information, and belief formed after a reasonable inquiry that

> (A) with respect to a disclosure, it is complete and correct as of the time it is made; and
>
> (B) with respect to a discovery request, response, or objection, it is:
>
>> (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

(ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

(iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26(g)(1). Rule 26(g)(3) provides: "If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3). The advisory committee's note to the rule explains:

> The duty to make a "reasonable inquiry" is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. It is an objective standard similar to the one imposed by Rule 11. In making the inquiry, the attorney may rely on assertions by the client and on communications with other counsel in the case as long as the reliance is appropriate under the circumstances. Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances.

Fed. R. Civ. P. 26(g), advisory committee's note to 1983 amendment (citation omitted); *see also DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 953 (N.D. Ill. 2021).

Under Rule 37, when a party provides incomplete or evasive disclosures, answers to interrogatories, or responses to requests to produce, the opposing party may seek to compel complete and non-evasive productions, answers, and responses. Fed. R. Civ. P. 37(a). If the court grants the motion, the non-complying party, its attorney, or both must pay the moving party's reasonable expenses, including attorney's fees, unless the non-complying party's position was substantially justified or an award of expenses would be unjust. Fed. R. Civ. P. 37(a)(5). "Rule 37(a) sanctions should encompass all expenses, whenever incurred, that would not have been

9

sustained had the opponent conducted itself properly." *Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 507 (7th Cir. 2016) (internal quotation marks and citation omitted).

After reviewing the briefs and hearing oral argument, the court concludes that sanctions are warranted under Rule 37. Tufco filed a motion to compel seeking communications between RB and its customers regarding cuts in orders. During a hearing on the motion, RB's counsel stated that there were no communications with customers about the cuts at issue. Based on counsel's representation, the court denied the motion to compel. Confronted with the apparent implausibility of RB's claim that no such documents existed, Tufco undertook its own investigation by issuing third-party subpoenas to RB's customers. Only after Tufco uncovered emails from RB's customers regarding cuts in orders did RB review its documents, admit that it had mistakenly failed to produce responsive documents to Tufco, and offer to cover the costs of any depositions that needed to be retaken. Tufco's presentation further discloses that RB has yet to produce requested discovery relevant to its damage claim and has failed to properly prepare Rule 30(b)(6) witnesses. Because this occurred four years after the case had been filed and near the close of fact discovery, Tufco has been scrambling to get relief from the court.

RB and its counsel argue that they acted in good faith, but it is simply not credible that RB would assert a claim for more than $10 million in damages on a breach of contract claim of this nature and have none of the information Tufco sought to substantiate its claimed losses. RB's claim is that it suffered damages because Tufco failed to provide the wipes it ordered for two months due to the labor shortage caused by the pandemic. Assuming Tufco's labor shortage does not constitute a force majeure event under the terms of the contract, the contract provided for Tufco to pay a penalty. Instead, RB declared a material breach and terminated the two-year contract after less than three months. Thus, the discovery Tufco sought was relevant not only to RB's counterclaim for damages but also to the issue of whether Tufco's failure to meet its obligations

10

constituted a material breach. RB's failure to provide the discovery requested by Tufco and properly prepare its Rule 30(b)(6) witnesses has caused significant expense to Tufco and delay in bringing the case to trial.

Based on these facts and viewing the record as a whole, the court finds that sanctions are appropriate under Rules 26(g)(3) and 37(a)(5)(A). Tufco's motion for sanctions (Dkt. No. 115) is **GRANTED-IN-PART** and **DENIED-IN-PART**. the court will order RB to pay Tufco's attorney fees, costs, and expenses incurred in obtaining the discovery of RB's damage claim. RB is further ordered to provide complete responses to Tufco's discovery requests (Interrogatories Nos. 7, 8, and 12 and Requests for Production Nos. 10 and 17) within the next thirty (30) days and to pay Tufco's attorneys fees, costs, and expenses incurred in conducting additional discovery necessitated by RB's failure to timely provide the outstanding discovery when requested. Although the record suggests that RB's counterclaim may be of questionable merit, the court declines to order dismissal as a sanction at this time. Tufco may renew its motion in the event RB fails to comply with this order, or it may request further sanctions in the event the counterclaim is shown to be frivolous. The court will also withhold rulings as to evidentiary adverse inferences and the automatic authentication of documents at this time. This relief is sufficient for now to cure the prejudice to Tufco. The clerk is directed to set the matter on the court's calendar for a telephone conference to address further scheduling.

**SO ORDERED** at Green Bay, Wisconsin this 17th day of December, 2025.

_William C. Griesbach_
William C. Griesbach
United States District Judge